(C. D. 850)

Lee & Schiffer, Inc., et al. v. United States

United States Customs Court, First Division

(Decided May 3, 1944)

Barnes, Richardson & Colburn (Joseph Schwartz of counsel) for the plaintiffs.
Paul P. Rao, Assistant Attorney General (John J. McDermott and Joseph B. Brady, special attorneys), for the defendant.
Lamb & Lerch (John G. Lerch and Thomas J. McKenna of counsel) amici curiae.

Before Oliver, Walker, and Cole, Judges

Oliver, Presiding Judge: These protests are filed against the action of the collector in assessing duty at the rate of 40 cents per pound and 50 per centum ad valorem under paragraph 33, Tariff Act of 1930, on certain bowls (containing shaving soap) by virtue of the similitude clause as articles composed of galalith. While claim is made upon behalf of the importers that the bowls are the usual containers and therefore dutiable at 30 per centum ad valorem under paragraph 80, the same rate as the toilet soap contained therein, this claim was not urged at the trial, counsel for the plaintiffs citing the case of McKesson & Robbins, Inc. v. United States (27 C. C. P. A. 157, C. A. D. 77) as probably precluding a judgment in their favor on this issue. It is alternatively claimed that these entireties are properly dutiable under paragraph 1558 of the Tariff Act of 1930 as non-enumerated manufactured articles, and plaintiffs rely chiefly on this claim.

The provisions of the Tariff Act of 1930 involved, together with paragraph 1539 (a) and paragraph 1559 to which reference is hereafter made, are as follows:

Par. 33. Compounds of casein, known as galalith, or by any other name, in blocks, sheets, rods, tubes, or other forms, not made into finished or partly finished articles, 25 cents per pound; made into finished or partly finished articles of which any of the foregoing is the component material of chief value not specially provided for, 40 cents per pound and 50 per centum ad valorem.

PAR. 1539. (a) Electrical insulators and other articles, wholly or partly manufactured, composed wholly or in chief value of shellac or copal, not specially provided for, 30 per centum ad valorem.

(b) Laminated products (whether or not provided for elsewhere in this Act) of which any synthetic resin or resin-like substance is the chief binding agent, in sheets or plates, 25 cents per pound and 30 per centum ad valorem; in rods, tubes, blocks, strips, blanks, or other forms, 50 cents per pound and 40 per centum ad valorem; manufactures wholly or in chief value of any of the foregoing, or of any other product of which any synthetic resin or resin-like substance is the chief binding agent, 50 cents per pound and 40 per centum ad valorem.

PAR. 1558. That there shall be levied, collected, and paid on the importation of all raw or unmanufactured articles not enumerated or provided for, a duty of 10 per centum ad valorem, and on all articles manufactured, in whole or in part, not specially provided for, a duty of 20 per centum ad valorem.

PAR. 1559. That each and every imported article, not enumerated in this Act, which is similar, either in material, quality, texture, or the use to which it may be applied to any article enumerated in this Act as chargeable with duty, shall be subject to the same rate of duty which is levied on the enumerated article which it most resembles in any of the particulars before mentioned; * * *.

At the trial all these protests were consolidated. A sample of the bowls in question was introduced in evidence (exhibit 1) and the court, at the request of counsel for the defendant, ordered the sample sent to the United States customs laboratory for analysis.

On the concession of Government counsel that the bowls here before the court were substantially the same in all material respects as those in the case of *Rolls Razor, Inc.* v. *United States* (6 Cust. Ct. 271, C. D. 480), the motion of plaintiffs' counsel to incorporate the record in that case was granted.

In the present case, three witnesses were called by the defendant and their testimony may be summarized as follows:

Mr. Sample, a chemist in the customs laboratory, who analyzed the sample (exhibit 1) testified:

The qualitative analysis, based on burning, color reactions, distillation, and microscopic examination, indicated that the exhibit was composed of synthetic resin and ground wood filler, plus a little coloring matter. The analysis covered a period of about 3 weeks.

The quantitative analysis established that the composition of the bowl (exhibit 1) was wood flour filler about 45 to 50 per centum, and synthetic resin from 55 to 45 per centum, plus a small amount of color.

From his experience of 17 years with articles such as exhibit 1, he stated that the wood flour is a filler material and serves to cheapen the article as well as a reinforcing agent against impact. He stated that the synthetic resin was the chief and only binding agent.

Mr. Riley, a chemist connected with the Bakelite Corporation, who has had a long and varied experience in the plastics field, testified:

That he was familiar with a material known as galalith which is a plastic, in his opinion; it is a hard casein; that he had examined exhibit 1 in the instant case; that he had never seen articles exactly like exhibit 1 molded of galalith, but had seen articles of comparable shape; that he received a sample of exhibit 1 from the

United States customs laboratory, given to him by Dr. McSorley; that he made his own analysis of said sample and his findings were substantially the same as those of Mr. Sample; that the function of the synthetic resin is to bind the filler together into a cohesive whole; that the synthetic resin was the chief binding agent; and that it is the only material that binds the wood flour to make the finished article.

Mr. Shepard, a chemist connected with the Durez Plastics and Chemicals, after stating his company manufactured plastics and that he was in charge of the laboratory, testified:

That his company made a number of molding compounds that would fall in the general grouping of exhibit 1 as analyzed by Mr. Sample, containing about 50 per centum resin and about 50 per centum wood flour; that the function of the synthetic resin in exhibit 1 is that it acts as a binder for the small particles of wood.

Counsel for the plaintiffs contends that the issue in the instant case is controlled by the doctrine of *stare decisis* because of at least four decisions rendered by this court; viz, *Rolls Razor, Inc.* v. *United States, supra, Alliance Distributors, Inc.* v. *United States* (1 Cust. Ct. 131, C. D. 35); *Nippon Dry Goods Co.* v. *United States*, Abstract 42414; and *Bates* v. *United States* (66 Treas. Dec. 104, T. D. 47189). None of the foregoing cases is controlling here. In each of the cited cases the article was made *wholly* of synthetic resin and in no case did it appear that the synthetic resin was the binding agent. There is no specific provision in the tariff act for articles composed wholly of synthetic resin. For this reason, there being no specific provision for the articles in the aforementioned cases, the court held the merchandise properly dutiable as "articles manufactured   *   *   *   not specially provided for."

In the incorporated *Rolls Razor* case, *supra*, the court held that the soap bowls were not dutiable as galalith, by similitude, as there was not a sufficient showing as to similarity to warrant a holding that the two classes of merchandise were similar as to material, quality, texture, or use. The court also found that the evidence did not support the contention that the merchandise was dutiable under paragraph 1539 (b) as a product of which any synthetic resin or resin-like substance is the chief binding agent. The protests were therefore sustained and the merchandise held dutiable as a nonenumerated manufactured article.

Considering the record in the incorporated *Rolls Razor* case, *supra*, and the additional evidence introduced in the instant case, we are of opinion that the evidence is still insufficient to establish similitude to galalith in material, quality, texture, or use. As stated by the court in the *Rolls Razor* case, "The fact that the imported merchandise and the merchandise provided for in said paragraph 33 both belong to the plastic family is no evidence that the two are similar in any respect." In like manner, upon the entire record, the mere fact that galalith is

a plastic, and molded articles are made from it, does not establish that it is similar to the imported article. The bowls, however, do fall directly within the provisions of paragraph 1539 (b), as being " * * * any other product of which any synthetic resin * * * is the chief binding agent * * *."

Plaintiffs' counsel contends that the synthetic resin is not a binding agent but is the main bulk or body of the article itself. This is not supported by the testimony. The record discloses that these articles contain approximately 50 per centum wood flour filler and 50 per centum synthetic resin, plus a little coloring matter. In the *Rolls Razor* case, *supra*, plaintiff's chemist testified as to the synthetic phenolic resin: "No, it isn't a binding agent; it is the main body of the thing." The court there said:

> Considering the record as a whole, we are satisfied that the imported merchandise is not a product of which synthetic resin or resin-like substance is the chief binding agent.

In the case at bar, however, it is very definitely established that the synthetic resin is the chief binding agent.

In a supplemental brief plaintiffs have urged upon us an added argument in support of their contention that these articles are not provided for under paragraph 1539 (b). Our attention is directed to the fact that paragraph 1539 (b) provides in part for "manufactures wholly or in chief value of any of the foregoing, or of any other product of which any synthetic resin or resin-like substance is the chief binding agent * * *." Plaintiffs contend that it is not the *manufacture* (the shaving bowl) of which the resin shall be the chief binding agent, but it is the *product* from which the article (bowl) is made that must have the resin present as a binding agent. Plaintiffs argue that the product from which the shaving bowls are made is in powder or pellet form and has no binding agent present. We do not agree with this contention. The product from which the bowls are made is a powder or pellet consisting of the wood flour, color, and the synthetic resin, the latter being the binding agent. This product is made from sheets which have previously been manufactured and then ground into the powder form. This molding compound is manufactured and sold in this form to manufacturers of finished molded products such as the shaving bowls now before us. The molding powder is a product manufactured and prepared for a special use and has as a constituent part the synthetic resin as a binding agent. It is quite true that this binding agent does not become active until the article is manufactured, but it is there ready to be activated the moment the manufacturing process of the finished article gets under way. The finished article is manufactured from a product of which synthetic resin is the chief binding agent. Without the presence of that binding agent the product (molding compound) could not be sold or used for the manu-

facture of the finished article. In this connection, it is evident that the Congress in enacting paragraph 1539 (b) was in no doubt as to what it intended to cover. In discussing this paragraph the Senate Finance Committee commented (Senate Report No. 37, 71st Congress, 1st Session, page 52):

The phrase "or of any other product of which any synthetic resin or resin-like substance is the chief binding agent," has been inserted in order to make specific provision for an important group of products known as molded products. These are made by molding under heat or heat and pressure a mixture containing synthetic resin or a resin-like substance and a filler, such as wood flour and pigments.

Molded products included in this provision cover a wide range and are used chiefly in electrical or mechanical machinery where requirements of electrical insulation properties, mechanical strength, exactness of form or size, and resistance to destructive agents, render them of peculiar importance. These molded products find a multitude of uses.

We are of opinion that paragraph 1539 (b) provides for:

(1) Laminated products of which a synthetic resin or resin-like substance is the chief binding agent.

(2) Manufactures wholly or in chief value of any laminated products whether they be in the form of sheets or plates, or rods, tubes, blocks, strips, blanks, or other forms.

(3) Any other product of which any synthetic resin or resin-like substance is the chief binding agent.

Whether the interpretation given by the plaintiffs to the grammatical construction of this paragraph is the correct one, or whether it should be construed as we have indicated above, is not material because under either interpretation the manufactured article or the product from which it is made has synthetic resin as the chief binding agent.

Paragraph 1558 providing for nonenumerated manufactured articles may be invoked only where the article is not enumerated or provided for elsewhere in the act. (*General Electric Co.* v. *United States*, 4 Ct. Cust. Appls. 398, T. D. 33839.) In like manner the provisions of paragraph 1559 for classification by similitude may not be invoked if provision is made for the article elsewhere in the act. (*Corporacion Argentina de Productores de Carnes* v. *United States*, 29 C. C. P. A. 288, C. A. D. 204.)

We therefore find the merchandise at bar to be incorrectly classified by the collector under paragraph 33 by similitude to galalith, and further find it to be not dutiable under paragraph 1558 as a nonenumerated manufactured article as claimed. We hold these articles are properly dutiable under paragraph 1539 (b) as "any other product of which any synthetic resin or resin-like substance is the chief binding agent." We therefore cannot here do more than overrule the protests without affirming the action of the collector.

Judgment will enter accordingly.