(C.D. 2111)

Prepac, Inc. *v.* United States

United States Customs Court, First Division

(Decided September 3, 1959)

*Rachlin, Migdal & Low* (*Lester C. Migdal* of counsel) for the plaintiff.
*George Cochran Doub*, Assistant Attorney General (*Murray Sklaroff*, trial attorney), for the defendant.

Before OLIVER, MOLLISON, and WILSON, Judges

MOLLISON, Judge: The merchandise the subject of this protest consists of a polyvinyl chloride type of plastic sheeting in various colors and decorative effects, which was assessed with duty at the rate of 25 cents per pound and 20 per centum ad valorem under the provision in paragraph 1539(b) of the Tariff Act of 1930, as modified by the Presidential proclamation reported in T.D. 52739, for:

Manufactures wholly or in chief value of any product of which any synthetic resin or resin-like substance is the chief binding agent * * *.

Plaintiff claims that the foregoing provision of paragraph 1539(b) is not applicable to the merchandise at bar for either of two reasons: First, on the ground that the imported merchandise consists only of a synthetic resin, plus an opacifier or pigment for the decoration of the sheeting, and that there is no filler substance or "product" of which the synthetic resin was a binding agent; and, second, on the ground that the legislative history of the provision shows that it was intended to refer only to molded products, which it contends the plastic sheeting at bar is not.

Alternative claims for lower rates of duty are stated in the protest and by amendment thereof. Plaintiff relies, primarily, upon claims made under the similitude provision, paragraph 1559(a), Tariff Act of 1930, as amended (68 Stat. 1137), reading as follows:

PAR. 1559. (a) Each and every imported article, not enumerated in this Act, which is similar in the use to which it may be applied to any article enumerated in this Act as chargeable with duty, shall be subject to the same rate of duty as the enumerated article which it most resembles in the particular before mentioned; and if any nonenumerated article equally resembles in that particular two or more enumerated articles on which different rates of duty are chargeable, it shall be subject to the rate of duty applicable to that one of

such two or more articles which it most resembles in respect of the materials of which it is composed.

By its claim under the similitude provision, plaintiff denies that the plastic sheeting at bar is dutiable directly under any of the dutiable enumerations of the tariff act. It claims that the enumerated article which the imported plastic sheeting most resembles in the use to which it may be applied is patent leather, dutiable under the provision in paragraph 1530 of the Tariff Act of 1930, as modified by the Presidential proclamation reported in T.D. 51802, reading, so far as pertinent, as follows:

Leather (except leather provided for in subparagraph (d) of paragraph 1530, Tariff Act of 1930), made from hides or skins of cattle of the bovine species:

\*      \*      \*      \*      \*      \*      \*

Patent leather_____ 7½% ad val.

Alternatively, plaintiff claims that the enumerated article which the imported plastic sheeting most resembles in the use to which it may be applied is oilcloth or coated cotton cloths, dutiable under the provisions of paragraph 907 of the said act, as modified by T.D. 51802, at the rate of 12½ per centum ad valorem.

Plaintiff also claims, alternatively, by similitude, under the provision for manufactures of india rubber in paragraph 1537(b), Tariff Act of 1930, as modified by T.D. 53865, but this claim, although stated in the amendment of the protest filed in this case, does not seem to have been pressed either at the trial of the issue or in the briefs filed on behalf of the plaintiff.

Finally, if it be held that the merchandise is not dutiable under any of the provisions above cited, by similitude, plaintiff claims it to be properly dutiable under the nonenumerated manufactured articles provision in paragraph 1558, as modified by the Presidential proclamation reported in T.D. 52739, at the rate of 10 per centum ad valorem.

There does not seem to be any question but that if the merchandise is not properly classifiable under paragraph 1539(b), as assessed, it is not dutiable directly under any of the enumerations in the dutiable list of the tariff act (excluding from consideration the provisions of paragraph 1558 for *non*enumerated manufactured articles). It is, therefore, apparent that the first question which must be determined is whether the merchandise at bar is properly classifiable as assessed by the collector, i.e., under the provision in paragraph 1539(b) for manufactures wholly or in chief value of any product of which any synthetic resin or resinlike substance is the chief binding agent. If it is, of course, none of the plaintiff's claims can be held to apply to the merchandise.

Although there is no direct evidence or any formal concessions on the point, it appears from colloquy between counsel reported on the record of the trial that the collector's classification was based upon

findings by a chemist in the United States Customs Laboratory that the ash content of the merchandise at bar exceeded 8 per centum. Simply stated, it appears that the ash content is what remains after a given sample of the merchandise is burned, and it also appears that if the ash content were below 8 per centum, it was the administrative practice not to classify merchandise such as that at bar under paragraph 1539(b), while if the ash content were 8 per centum or more, classification under that provision would be applied.

There was offered and received in evidence without objection as plaintiff's exhibit 1 the report of the Customs Laboratory chemist concerning tests and conclusions made by him with respect to samples of the merchandise covered by the entry here involved. The body of the report reads as follows:

The samples are made from a colored synthetic resin (polyvinyl chloride type) and contain no organic filler.

The ash contents (including pigment) are as follows:

| Marks | % | Weight per Sq. Yd. |
|---|---|---|
| #2067 | 9.0 | 4.4 |
| #2071 | 11.2 | 3.0 |
| #2072 | 10.9 | 3.3 |
| #2057 | 2.7 | 2.75 |
| #2090 | 8.7 | 3.65 |
| #2091 | 10.0 | 3.5 |
| #3676 | 9.7 | 8.1 |

Both parties conceded the accuracy of the above report, and it should be noted that the merchandise represented by item No. 2057 was *not* classified and assessed with duty under paragraph 1539(b), *supra*, and its classification is not involved in this protest. A sample of item No. 2057 was received in evidence without objection as plaintiff's exhibit 2, and samples of the remaining items were received in evidence without objection as plaintiff's collective exhibit 3-A to 3-F, inclusive.

Counsel for the defendant conceded that no tests were made to determine the nature of the ash, or the purpose of the ash; that it was mineral in nature; and that no attempt was made to determine whether the ash contents were "there as opacifiers or pigments."

There have been numerous decisions of this court, of which *Mimosa American Corp.* v. *United States*, 15 Cust. Ct. 338, Abstract 50728, and *Tuck High & Co.* v. *United States*, 16 Cust. Ct. 230, Abstract 50912, may be cited as examples, holding that merchandise, composed wholly or in chief value of synthetic resin *and in which the synthetic resin does not act as a binding agent in the article*, is not classifiable under the provision in paragraph 1539, under which the merchandise at bar was assessed. It is apparently with the rulings in such cases in mind that the trial attorney for the defendant

stated its position to be that if the mineral matter (ash) in the quantities found in the samples in this case were present as an inherent part of the resin itself, to give the resin its character, or to stabilize, opacify, or pigment (color) the resin, the concession would be made that paragraph 1539(b) was not applicable.

Put another way, it appears from the chemist's report, plaintiff's exhibit 1, that the imported sheetings, which were assessed under paragraph 1539(b), were composed of 88.8 to 91.3 per centum of synthetic resin. If the balance of their composition, which is represented by the ash percentages found by the chemist, were present for some purpose other than as filler material, it would be conceded that the sheeting was not made of a product of which a synthetic resin was the chief binding agent.

The defendant has expressly, as well as implicitly, agreed that there was no *organic* filler in the imported sheetings. The ash found in the sheetings, being mineral, presumably represented inorganic matter, and the question is whether it was there as filler material bound by the synthetic resin in the sheeting or as a part of the resin itself or merely to opacify or color the resin.

The plaintiff assumed the burden of establishing that the ash represented a pigment, to wit, titanium dioxide, present in sheetings to color the same and not as a filler material. Plaintiff offered the testimony of a witness qualified as a chemical engineer with special competence in the fields of plastics and dyestuffs, including the nature of the chemical composition of plastics used in materials such as are here involved.

This witness made physical tests and microscopic examinations of samples of the imported sheetings cut from the same material as exhibits 2 and 3-A, to 3-F, inclusive. He testified that, upon examining exhibit 2 (item No. 2057) under a microscope, he found that it had many particles of a black pigment, to wit, carbon black, and concluded that the reason for its low ash content (2.7 per centum) was that carbon black burns up in the test and leaves only the small residual amount of ash which may have been present in the resin, or from other accountable sources. In other words, as we understand it, the ash content of exhibit 2 was attributable to mineral substances present in the sheeting but not as opacifiers or pigments, and might have been inherently or accidentally present in the synthetic resin itself.

The significance of the foregoing testimony concerning an item not involved in this case, although part of the instant importation, lies in the contrast of the witness' findings with those in the case of the tests he performed in connection with exhibits 3-A to 3-F, inclusive.

The witness testified that upon similar examinations of exhibits 3-A to 3-F, inclusive, he found that "most" of the residual ash was

titanium dioxide, a white pigment, used to produce the white color or light backgrounds of those samples. Unlike carbon black (the pigment in exhibit 2), the witness testified, titanium dioxide does not burn. It was the witness' opinion, based upon the facts (1) that titanium dioxide costs 50 to 100 times as much as many other inorganic materials that could be used as a filler; (2) that the samples exhibited white or light backgrounds; and (3) that titanium dioxide is used as a pigment, and never, in his experience, as a filler, that the titanium dioxide found in the imported sheetings was present as a pigment, rather than as a filler.

Although in his testimony he stated that "most" of the ash was titanium dioxide, he explained that the portion of the ash which was not titanium dioxide may have resulted from the accidental inclusion of inorganic substances during manufacture. In any event, it would appear that any ash which was not accounted for by titanium dioxide was so small as to be below the Government's own limit of 8 per centum, and, consequently, not accountable as filler.

The testimony of the witness was not contradicted and was not shaken on cross-examination. We are of the opinion that his testimony, both as an expert on the subject of plastics and dyestuffs and upon the reasons advanced by him for his conclusions, may be accepted by the court as establishing the fact that the ash content of exhibits 3–A to 3–F, inclusive, represented pigment, and did not represent filler materials.

We are satisfied from the record as made that the plaintiff established that the provisions of paragraph 1539(b) of the Tariff Act of 1930, as modified, under which classification of the sheetings at bar was made, were not applicable to the merchandise. Inasmuch as it appears that the merchandise is not dutiable directly under any of the enumerations in the dutiable list of the tariff act (excluding from consideration, of course, the provisions of the catchall paragraph 1558), our next inquiry is whether the imported sheeting is properly dutiable, by similitude, under the provisions of paragraph 1559(a), *supra*, to any article or articles enumerated in the act as chargeable with duty.

At the trial of the issue, counsel for the plaintiff offered the testimony of the vice president of the importing corporation, a man well qualified in the use of plastic films and sheetings such as those at bar and of oilcloth and chintz, a coated cotton fabric. His testimony clearly established that in the uses to which they may be applied the imported sheetings closely resemble oilcloth and chintz. Counsel for the defendant has conceded, in the brief filed in its behalf, that if paragraph 1539(b), *supra*, is inapplicable to the merchandise, plaintiff's claim for classification by similitude to oilcloth and to coated cotton cloths under paragraph 907 is correct.

However, plaintiff has pressed its claim for duty by similitude to patent leather. We do not find much, if anything, in the record which could be considered to support that claim. There is some evidence that the imported sheetings have been used in the manufacture of pouches, cases, and bags, and also for the uppers and soles of slippers. However, there is nothing to indicate that in such uses it resembles or is similar to *patent* leather. Moreover, it appears that its suitability for slipper use (assuming that to be the basis for the claim by similitude to patent leather) is for those slippers the uppers and soles of which are quilted. It seems to us that slippers of patent leather, which is a hard substance, have quite different uses from those slippers which are made of soft materials, such as quilted materials. Further, it appears that the suitability for use in quilted slippers is largely based upon the fact that in such use small remnants can be utilized—which tends to indicate a fugitive or byproduct rather than a major use.

We are of the opinion that even if there is any similarity of use between the imported sheetings and patent leather (and, as has been said, the record is virtually barren of any direct evidence on the point), the only inference that can be drawn from the record is that the imported sheetings resemble oilcloth or coated cotton cloths much more closely in respect of the uses to which they may be applied than they do patent leather. While the similitude provision is applicable in the case of a similarity in the use to which the imported article may be applied to *any* article enumerated in the tariff act as chargeable with duty, the rate of duty to be assessed is that which is provided for the enumerated article which the imported article *most* resembles in respect of the use to which it may be applied.

On the record made, judgment will issue sustaining the protest claim for duty at the rate of 12½ per centum ad valorem, by similitude, under paragraph 1559(a), as amended, to the articles provided for in paragraph 907, as modified, *supra*, of the Tariff Act of 1930.