(C.D. 3978)

THE ORIENT, INC. *v.* UNITED STATES

United States Customs Court, First Division

(Decided March 11, 1970)

*Glad & Tuttle* (*Robert Glenn White* of counsel) for the plaintiff.
*William D. Ruckelshaus*, Assistant Attorney General (*Mollie Strum* and *Glenn E. Harris*, trial attorneys), for the defendant.

Before WATSON, MALETZ, and RE, Judges

WATSON, Judge: The merchandise at bar consists of certain plastic lacquer articles which were classified by the collector of customs under paragraph 1539(b) of the Tariff Act of 1930, as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, T.D. 54108, and assessed with duty at 21 cents per pound plus 17 per centum ad valorem.

Plaintiff claims that the merchandise is properly classifiable by similitude to articles in chief value of cellulose acetate under paragraph 31(a) (2) of the Tariff Act of 1930, as modified by T.D. 54108, *supra*, and dutiable at 17 per centum ad valorem. Alternatively, plaintiff claims that the merchandise should be classified under paragraph 1558 of the said tariff act, as modified by T.D. 52739, with duty assessment at the rate of 10 per centum ad valorem as non-enumerated manufactured articles.

Essentially, plaintiff contends that the involved articles are neither a laminated product nor a product which is wholly or in chief value of any product in which synthetic resin is the chief binding agent; and that the synthetic resin does not bind anything, but rather is a constituent element of the articles themselves.

The statutes here involved are as follows:

Classified under:

Paragraph 1539(b) of the Tariff Act of 1930, as modified by T.D 54108:

> Laminated products (whether or not provided for elsewhere in the Tariff Act of 1930 than in paragraph 1539(b) thereof) of which any synthetic resin or resin-like substance is the chief binding agent:
>
>    \*      \*      \*      \*      \*      \*      \*
>
> In rods, tubes, blocks, strips, blanks, or other forms_____ 21¢ per lb. and 17% ad val.
>
> Manufactures wholly or in chief value of any product described in the preceding item 1539 (b), or of any other product of which any synthetic resin or resin-like substance is the chief binding agent_____ 21¢ per lb. and 17% ad val.

Claimed under:

Paragraph 31(a) (2) of the Tariff Act of 1930, as modified by T.D. 54108:

> Cellulose acetate, and compounds, combinations, or mixtures containing cellulose acetate:
>
>    \*      \*      \*      \*      \*      \*      \*
>
> Made into finished or partly finished articles of which any of the foregoing is the component material of chief value, and not specially provided for_____ 17% ad val.

Paragraph 1558 of the Tariff Act of 1930, as modified by T.D. 52739:

Articles manufactured, in whole or in part, not
specially provided for (except * * *)_____    10% ad val.

## THE ISSUES

1. Has the plaintiff established that synthetic resin does not act as the chief binding agent and that the articles were not properly classified under the provisions of paragraph 1539(b)?

2. Has the plaintiff failed to establish its claim by similitude under paragraph 31(a)(2)?

3. Has plaintiff established that the imported merchandise is both "non-enumerated" and not properly classifiable by similitude to *any* enumerated article?

The record consists of the testimony of two witnesses called by the plaintiff and one witness who testified on behalf of the defendant. Plaintiff further introduced in evidence 18 exhibits, 14 of which were samples of certain of the imported items (exhibits 1 through 14). The four remaining exhibits (15 through 18) consist of reports of laboratory analyses of certain of the samples (exhibits 1, 2, 3, and 4) on which so-called "ash" tests were made. The reports indicate an ash content ranging from 1.3 down to 0.6 percent ash. Defendant's exhibit A is a report of the United States Customs Laboratory analyzing plaintiff's exhibits 1 through 14. It reveals a high cellulose content of the items tested ranging from 13.3 to 19.8 percent. The report states: "In our opinion the synthetic plastic is acting as the chief binding agent."

Mr. Paul E. Matheny, a graduate chemist and member of the American Chemical Society and American Institute of Food Technologists, who was employed by the Smith-Emery Company, an independent physical and testing laboratory, testified on plaintiff's behalf. He stated that, in his opinion, exhibits 1, 2, 3, and 4 are not laminated articles. Mr. Matheny further testified that from the ash tests performed on exhibits 1 through 4 which indicated an ash content ranging from 1.3 percent down to 0.6 percent ash, he concluded that due to the low ash content, the ash was not present as a filler. Plaintiff's witness further stated that he conducted a spectrographic examination of exhibits 1 through 4 and that:

> It was indicated to me from the low ash contents and the spectrographic examination of those ashes that the constituents found in the ashes would be indicative of paint pigments, not fillers.

On cross-examination, Mr. Matheny testified that the purpose of an ash test is "to determine what is left after burning"; that the mate-

rials which leave an ash after burning are wood, cloth, paper, and foodstuffs, and, that after the ash test is run, the inert material, that is, only the ash that will not burn, remains. The witness further testified that the polyvinyl resin itself would not remain as ash, and that the remains "would be something else". The resin is not an inert material, but is organic and will burn.

Mr. Denzel Curtis, a graduate of the University of California, who had majored in chemistry, agriculture and botany and taught in those same fields, and who presently was a chemist for the United States Customs Service in Los Angeles, testified on behalf of the defendant. The witness identified the laboratory report which indicates the results of the analyses he performed on samples of the imported items which were sent by the court to his laboratory (exhibit A). The witness further stated that the results he obtained on the ash content of exhibits 1 through 4 did not differ essentially from those found by plaintiff's witness Matheny.

Mr. Curtis further testified that he analyzed each of the exhibits sent to him by the court (exhibits 1 through 14) for the presence of cellulose and in this connection stated:

> I took samples from each exhibit and weighed out a quantity after it had been ground up thoroughly, and adjusted it in an acid solution to take the mineral matter and the plastic material into solution, leaving the cellulose material as a residue. I separated off the dissolved materials and dried the residue, and weighed it and examined it under the microscope and found that it was wood fibers or other cellular material. I also subjected this residue to what is known as the Anthrone test. [R. 40.]

The "Anthrone" test demonstrates the presence of cellular material such as wood fibers or paper fibers. It is a qualitative test. The witness stated that cellulose is not a synthetic resin but is a natural material; that it is an organic material which will burn so that when subjected to a test for ash, it would leave essentially no residue. Mr. Curtis stated that from the reports of the samples tested by Mr. Matheny (exhibits 15 through 18), he saw no indication that any tests for the cellulose content of such items had been made.

It is well settled that the collector's classification carries a presumption of correctness, and that the burden of proof rests upon the importer not only to show that the classification was erroneous but also to establish that its own claim is correct. *Schlumberger Well Surveying Corp.* v. *United States*, 54 CCPA 37, C.A.D. 901 (1967).

Both parties to this controversy cite the case of *Prepac, Inc.* v. *United States*, 43 Cust. Ct. 97, C.D. 2111 (1959). The merchandise there involved consisted of a polyvinyl chloride type of plastic sheeting in various colors and decorative effects. It was assessed with duty

at the rate of 25 cents per pound and 20 per centum ad valorem under the provisions in paragraph 1539(b) of the Tariff Act of 1930, as modified (T.D. 52739) for "manufactures wholly or in chief value of any product of which any synthetic resin or resin-like substance is the chief binding agent * * *".

Plaintiff in *Prepac, Inc., supra,* claimed that the provision of paragraph 1539(b), *supra,* was not applicable to the merchandise in question, first, on the ground that the imported merchandise consisted only of a synthetic resin, plus an opacifier or pigment for the decoration of the sheeting, and that there was no filler substance or "product" of which the synthetic resin was a binding agent; and second, on the ground that the legislative history of the provision showed that it was intended to refer only to molded products, plaintiff therein contending that the involved plastic sheeting was not a molded product. Plaintiff in the case relied, primarily, upon claims made under the similitude provision, paragraph 1559(a) of the Tariff Act of 1930, as amended, specifically claiming that the enumerated article which the imported plastic sheeting most resembled in the use to which it may be applied was patent leather, dutiable under paragraph 1530 of the Tariff Act of 1930, as modified.

It appeared in the *Prepac* case, *supra,* that the collector's classification was based upon findings by a Government chemist that the "ash" content of the involved merchandise exceeded 8 per centum. It further appeared that the ash content is what remains after a given sample of the merchandise is burned, and also that if the ash content were below 8 per centum, it was the administrative practice not to classify merchandise such as that there in question under paragraph 1539(b), while if the ash content were 8 per centum or more, classification under that provision would be applied. The chemist's report in the *Prepac* case, *supra,* disclosed that the imported sheeting was composed of 88.8 to 91.3 per centum of synthetic resin. Plaintiff's witness therein was qualified in the fields of plastics and dyestuffs, including the nature of the chemical composition of plastics used in materials such as those involved. He testified that upon examination of certain representative exhibits he found most of the residual ash was titanium dioxide, a white pigment used to produce the white color or light background of the samples, and that the titanium dioxide in the imported sheeting was present as a pigment, rather than as a filler. The court in the *Prepac* case stated that since the testimony of plaintiff's witness was not contradicted or shaken on cross-examination, it accepted the chemist's opinion as establishing that the ash content represented pigment and not filler materials. The court accordingly found that the provisions in paragraph 1539(b), *supra,* were not applicable to the merchandise. Upon the record advanced, the

court in the *Prepac* case upheld plaintiff's claim for classification of the merchandise by similitude to oilcloth and to cotton cloths under paragraph 907 of the tariff act.

In support of the collector's classification, the defendant calls to our attention the case of *Sentora Hardware Distr., James G. Wiley Co. et al.* v. *United States*, 59 Cust. Ct. 558, C.D. 3227 (1967). There, the merchandise consisted of plastic friction tape which was classified under paragraph 1539(b), *supra*, as manufactures wholly or in chief value of any product of which any synthetic resin or resin-like substance is the chief binding agent. In the *Sentora* case, *supra*, the same two witnesses as in the present case, testified. Plaintiff's witness Matheny testified therein that he had had an ash test performed on a sample of the merchandise there imported. The result of his test showed an ash residue of 1.3 percent. The witness did not consider the indicated ash content to be indicative of a mineral filler bound together with a binding agent, stating in this connection that an ash residue of 3 to 5 percent or over would indicate a filler, but that under that it would not. On the other hand, Mr. Curtis testified therein on behalf of the Government that after testing a sample of the merchandise, he found the ash residue to be 4 percent. Based on that, it was his opinion that the synthetic resin in the tape acted as the chief binding agent. The court in the *Sentora* case held that the evidence therein was insufficient to establish that no filler bound by synthetic resin was present and in this connection, stated (page 563):

> No evidence was presented as to the method of manufacture of the plastic tape which would show what materials, if any, were added to the synthetic resin or for what purpose. * * *

In the case at bar, plaintiff offered no evidence concerning the materials which were used to manufacture the imported merchandise.

In *Lee & Schiffer, Inc., et al.* v. *United States*, 12 Cust. Ct. 183, C.D. 850 (1944), certain shaving bowls manufactured from wood flour and synthetic resin, with coloring matter, were held to be properly classifiable under paragraph 1539(b), *supra*, as manufactures of products having synthetic resin or resin-like substance as the chief binding agent. The court therein referred to the testimony of a Government chemist who from his experience of 17 years with articles such as there imported, stated that "the wood flour is a filler material and serves to cheapen the article as well as a reinforcing agent against impact." He further stated that the synthetic resin was the chief and only binding agent. In the case at bar, the Government chemist, an expert witness, testified that the Anthrone test indicated the presence

of wood fibers, and stated that the synthetic resin acted as the chief binding agent.

The customs laboratory report (exhibit A) of the results of an analysis of samples of the imported merchandise (exhibits 1 through 14) reveals, as heretofore indicated, a high cellulose content. As indicated, the said report concludes:

> In our opinion the synthetic plastic is acting as the chief binding agent.

The evidence elicited by the above report stands unrebutted. Plaintiff offered no testimony to the contrary. Further, plaintiff's witness, Matheny, did not testify that synthetic resin is not acting as the chief binding agent in the imported merchandise.

In *Webster's New International Dictionary of the English Language*, Second Edition, Unabridged, 1957, page 432, cellulose is defined as follows:

> cellulose * * * An inert substance constituting the chief part of the solid framework (cell walls) of plants, of ordinary wood, linen, paper, rayon, etc. * * *

The record discloses that the Anthrone test, performed by defendant's witness, demonstrates the presence of cellulose material such as wood fibers or paper fibers. Cellulose is not a synthetic resin, but is a natural material. It further appears that cellulose is an organic material which will burn, so that when subjected to a test for ash content it would leave a "very minute amount of residue * * * essentially no residue." Accordingly, it would appear that the ash content in this case was low because the wood-type material is organic and is a filler that burns up in the ash test.

In our opinion, the presence of the cellulose indicates that a wood-type filler was used in the manufacture of the imported merchandise. Plaintiff offered no substantial proof to upset the presumption that the manufactures herein were products of which synthetic resin or resin-like substance is the chief binding agent. The record indicates, in our opinion, that the wood filler was held together by the synthetic resin, which was the chief binding agent. There is no evidence adduced on the plaintiff's part to rebut this fact. Accordingly, the merchandise is properly dutiable, as classified.

On the basis of the record here presented, we are of opinion and hold that the plastic lacquer articles here imported are properly dutiable under paragraph 1539(b) of the Tariff Act of 1930, as modified (T.D. 54108), at the rate of 21 cents per pound, plus 17 per centum ad valorem, as products of which synthetic resin or resin-like substance is the chief binding agent. Paragraph 1558, providing for

nonenumerated manufactured articles, may be invoked only where the article is not enumerated or provided for elsewhere in the act. *Lee & Schiffer, Inc., et al., supra.* In view of our holding herein, plaintiff's claim under paragraph 1558 is overruled.

The protests in this case are overruled. Judgment will issue accordingly.